UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CYPRESS DRILLING, INC.** | **CIV. ACTION NO. 06-0556** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **WILLIAM K. GRIFFIN, III, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

RULING

This case arises from a drilling contract between Plaintiff Cypress Drilling, Inc. ("Cypress") and Defendants William K. Griffin, III; John Andrew Griffin; Griffin & Griffin Exploration; and Griffin & Griffin Exploration, Inc. (collectively "Griffin"). Cypress brought suit against Griffin and Interstate Fire and Casualty Company ("Interstate"), alleging that Cypress suffered damage to its drilling rig and component parts as a result of Griffin's failure to provide a sound location and that Griffin has failed to pay for the damages.[1] Defendants Griffin and Interstate filed a Third Party Complaint, alleging that Third Party Defendant R.W. Delaney Construction Company ("Delaney") furnished the labor, equipment, material, and direction to prepare the drilling location at issue and that, if Griffin and Interstate are liable to Cypress, Delaney is liable for the damages.

On April 17, 2009, Delaney filed a Motion for Summary Judgment [Doc. No. 75], seeking the dismissal of Griffin and Interstate's claims against it on the basis that it did not contractually guarantee a sound location. Griffin and Interstate have a filed a memorandum in opposition to Delaney's Motion for Summary Judgment [Doc. No. 79], and Delaney has filed a reply

---

[1] Additionally, Cypress alleges that Griffin has failed to pay amounts due under the contract for the well Cypress drilled and improperly secured the services of another company to drill the remaining wells.

1

memorandum [Doc. No. 84] in support of its Motion for Summary Judgment.

For the following reasons, Delaney's Motion for Summary Judgment is DENIED.

**I.      RELEVANT FACTS**

Some time prior to March 2005, Griffin and Griffin Exploration, Inc. ("Griffin and Griffin") obtained leasehold interests in the oil, gas, and minerals in a number of tracts of land in Wilkinson County, Mississippi.

Griffin and Griffin then began soliciting bids from companies for the building of the location of one of the wells, B.R.F-46. Delaney was the successful bidder. On or about March 7, 2005, Delaney and Griffin and Griffin entered into a letter agreement pursuant to which Delaney agreed to prepare the location for drilling a natural gas well. Specifically, Delaney agreed to "[f]urnish labor, equipment and material to clear road, clear location, level location, dig all necessary pits, move rig in, service rig, move rig out and trench and bury drilling fluids." [Doc. No. 75-4, Exh. A].

On or about April 26, 2005, Cypress and Griffin and Griffin entered into a drilling contract in which they agreed that Cypress would drill a total of ten natural gas wells for Griffin and Griffin, as operator, at locations in Wilkinson County, Mississippi.

After the location was built and prepared by Delaney, Cypress began drilling a well at B.R.-F-46. On May 8, 2005, while drilling, Cypress alleges that the location "collapsed, cratered, or shifted," causing property damage to the rig and component parts. Cypress brought suit, in part, against Griffin under Section 15 of their contract, requiring Griffin to "prepare a sound location." [Doc. No. 75-5].

That same month, in May 2005, Cypress retained an expert, Charles Furlow ("Furlow"), a professional engineer, who performed a geotechnical investigation at the site of the accident. Furlow

determined that "the fill materials at the site were not adequately compacted." [Doc. No. 79, Exh. B]. Based on the geotechnical information and information obtained from Donnie Mixon, a principal of Cypress, Furlow concluded that "the cause of the rig failure appears to be improper preparation of the supporting pad. The fill materials to the north side of the rig (the direction in which the rig fell) is approximately twice as thick as that to the south. Insufficient compaction of the materials could exacerbate settling on this side of the rig, tilting and shifting the weight of the rig and ultimately causing the rig to fall." [Doc. No. 79, Exh. B].

However, in an October 2008 deposition, Furlow testified that he was not aware of any petroleum industry standards requiring that proctor density tests be done in the oilfield. [Doc. No. 84, Exh. E, pp. 58-59]. When he referred to "improper preparation of the supporting pad," Furlow meant that "the pad, the soils there were not properly compacted, placed and compacted." [Doc. No. 84, Exh. E, p. 95]. As an engineer, he would recommend that, "[p]rior to placing the fill material, a sample of [the soil] should have been brought to a lab . . . [to] run a standard proctor density test." [Doc. No. 84, Exh. E, p. 95]. Furlow would also recommend, as an engineer, that "they do a control on the pad. . . . plac[ing] the material in roughly eight to nine inch loose lifts, compact it, and have somebody on site to measure moisture and density to see that it's . . . constructed properly." [Doc. No. 84, Exh. E, p. 59].

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.

CIV. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.     Claim Against Delaney**

Delaney contends that there was a letter agreement between it and Griffin and Griffin, and that the agreement on its face did not require Delaney to provide a sound location. Thus, Delaney argues that Griffin and Interstate have no claim against it.

Griffin and Interstate respond that their claim against Delaney does not sound in contract, but in tort. Specifically, Griffin contends that, as a result of its contract, Delaney had a duty to prepare the location in a workmanlike manner, and, if the location was not sound, then Delaney breached its

4

duty in negligently preparing the location. According to Cypress's expert, the cause of the rig failure was improper preparation of the pad, which had was prepared by Delaney.

In its reply, Delaney agrees that the case law provides that it must execute its duties in a workmanlike manner, but that any duty arises from the contract. In this case, the contract or agreement did not provide for Delaney to prepare a "sound location" and/or to perform soil testing, nor is it part of the industry custom or standard to conduct soil testing absent an agreement to do so. Although Cypress's expert referred to improper preparation of the supporting pad, he explained that the soils "were not properly compacted, placed and compacted." [Doc. No. 84, Exh. E, p. 95]. However, the expert admitted that he was not aware of the customs and standards in the oil field or the petroleum industry standards. Because Griffin and Interstate have no other basis for holding Delaney liable, Delaney contends that it is entitled to summary judgment.

In *George B. Gilmore Co. v. Garrett*, 582 So.2d 387 (Miss. 1991), the Mississippi Supreme Court considered "the question of negligence in performing a contract." *Id.* at 388. In the *Garrett* case, a builder was alleged to have acted negligently in constructing a home.[2] The builder, George Gilmore[3] ("Gilmore"), had contracted in 1977 with Mr. and Mrs. Yates to build a house in Madison County, Mississippi. *Id.* The home was completed, the Yates lived in it for approximately three years without incident, and then sold it to the plaintiffs, Mr. and Mrs. Garrett. *Id.* at 389. The

---

[2]The builder was also alleged to have breached an implied warranty to build the house in a workmanlike manner, but there was no appeal on this claim. The Mississippi Supreme Court did note that the "distinction between the two concepts [of breach of the implied warranty and of negligence in the performance of a contract] in a case such as this . . . is illusory. . . A contractor-builder who fails to construct a house in a reasonably safe and workmanlike manner is negligent, in any event." 582 So.2d at 396.

[3]Gilmore was the sole shareholder in George B. Gilmore Company, a Jackson corporation. *Id.* at 388.

Garretts also lived in the home without incident until the summer of 1984 when the house developed serious cracks in the exterior and interior walls and ceiling and in the floor and dropped six to eight-and-one-half inches on one end. *Id.*

At trial, the evidence showed that Gilmore complied with the plans and specifications furnished to him and the requirements of the Veterans' Administration and Federal Housing Administration, through which the Yateses had secured a loan. However, four to five feet beneath the surface of the soil where the house was built was a "yazoo clay" formation, which is known to have a marked expansion or contraction depending upon the water absorbed into it, or drained from it. Despite knowledge of the existence of the yazoo clay, Gilmore did not perform any soil tests prior to construction and did not advise the Yateses that such tests should be performed.

At trial, plaintiffs offered the expert testimony of Furlow, the same expert retained by Cypress in this case. Furlow holds a master's degree in civil engineering, and is a consulting engineer with a specialty in geotechnical engineering. Furlow testified that he inspected the house and did numerous soil borings and took measurements of the footing to determine settling. It was his opinion that the house had an improper foundation because of the yazoo clay just a few feet below the surface, and the expansion and contraction of the clay caused the settling and cracking. Furlow testified that yazoo clay had been known to exist in Madison County and this area of Mississippi since the 1950s. A $1.50 map published in 1960 showed the location of yazoo clay. In order to avoid foundation problems in this county, Furlow testified that a house should not be constructed without a soil test, at a cost of $600-$800, and, if yazoo clay was found close to the surface, one of three procedures should be followed: (1) clear all vegetation, and then bring in enough of the proper type of fill material of sufficient depth to create a buffer over the clay, at a cost

of $1,500 to $2,000, (2) remove the soil down to the clay and replace it with material "that is needed to keep the clay from expanding and contracting," at a cost of $4,000; or (3) prepare a deep foundation on a series of concrete piers dug deep into the soil, at a cost of approximately $15,000. *Id.* at 390. Furlow relied on the 1976 edition of the Southern Building Code, which explained the procedure to be employed when "top or sub-soils are of a shifting or moving character." *Id.*

In contrast, defense witnesses testified that poor drainage caused the Garretts' foundation problems, that there was no trade custom to take soil testings in Madison County, and that the FHA and VA, which had the best standards in the United States for single-family homes, did not require soil testing. Nevertheless, defense witnesses conceded that yazoo clay causes expansion and yazoo clay formations in Madison County were known in 1977. At the time of trial in 1986, Gilmore conceded that he warned prospective owners of expensive homes of the need for soil testing.

Following trial, the jury returned a verdict for the Garretts, and the parties filed cross appeals. Relying on and quoting extensively from a North Carolina Supreme Court case, as well as Corpus Juris Secundum on negligence, and a Texas appellate court ruling, the Mississippi Supreme Court found that a plaintiff may assert a negligence claim based on the defendant's breach of the duty of care arising from a contract or contractual relationship. *Id.* at 391. While a duty of care,

> "as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract."

*Id.* (quoting *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897-898 (1955)). Thus,

> "Where a person contracts to do certain work he is charged with the common-law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract, and the parties may not substitute a contractual standard

7

for this obligation. (Emphasis added) [p. 496]

> . . . Accompanying every contract is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract."

*Id.* (quoting *Davis v. Anderson*, 501 S.W.2d 459, 462 (Tex. Civ. App. 1973)).

The Mississippi Supreme Court further explained that a person in a profession or trade, who undertakes to provide a service, is required "'to exercise the skill or knowledge normally possessed by members of that profession or trade in good standing in similar communities.'" *Id.* at 391-92 (quoting *Restatement (Second) of Torts*, § 299A (1965)). The Mississippi Supreme Court expressed a lack of "[p]ublic tolerance . . . for shoddy products or services, whatever the source," and, thus, "[i]f the product sold or service rendered is less than the customer or client is *fairly and reasonably* entitled to expect under *current and existing states of skill, knowledge and technology*, our courts will afford relief." *Id.* at 392.

In the *Garrett* case, the Mississippi Supreme Court held that the jury was warranted in concluding that yazoo clay was a potential problem in Madison County of which builders should have been aware in 1977 and that Gilmore breached his duty as a builder because he failed to warn the Yateses and make a soil test before construction. Additionally, once Gilmore undertook to construct the house without informing the Yateses of the danger, the Court held that the jury was warranted in finding that Gilmore acted negligently by failing to construct it in a manner "to afford protection over a yazoo clay foundation." *Id.* at 393.

The Court further held that the jury was warranted in finding that Gilmore's failure to warn was a proximate cause of the Garretts' damages. While the "VA standards, the plans and specifications and trade custom" did not call for Gilmore to perform soil tests or warn of the danger,

these items "are not in themselves conclusive. They do not as a matter of law absolve Gilmore **under the facts of this case**." *Id.* at 394 (emphasis added). A builder or contractor "in an ordinary case should not be required to go beyond the plan and specifications, they after all being a part of his contract spelling out his obligations"; on the other hand, "[n]either should plans and specifications which clearly do not take into account a construction problem of which the builder/contractor, the man with the expertise should be well aware, remove from him all duty to warn." *Id.* at 396.

In this case, Delaney originally moved for summary judgment on what it believed to be Griffin and Interstate's breach of contract claim. In their response, however, Griffin and Interstate clarified that they seek indemnification from Delaney, only if they are held liable to Cypress. They contend that they are entitled to indemnification under a tort theory of recovery for negligence in the performance of the contract. Thus, Griffin and Interstate apparently agree that Delaney fulfilled its obligations under the four corners of the letter agreement to "[f]urnish labor, equipment and material to clear road, clear location, level location, dig all necessary pits, move rig in, service rig, move rig out and trench and bury drilling fluids." [Doc. No. 75-4, Exh. A]. To the extent that Griffin and Interstate's Third Party Complaint against Delaney can be read to include a breach of contract claim, Delaney's Motion for Summary Judgment is GRANTED, and that claim is DISMISSED.

The Court now turns to Griffin and Interstate's claim that Delaney acted negligently in the performance of the contract. The parties have both had the opportunity to brief this claim as well. As Delaney correctly asserts, the letter agreement provides the basis from which any duty it had arises. According to Cypress's expert, Cypress's rig fell because of improper support in the foundation, so Griffin and Interstate must show that Delaney failed to act as a reasonable contractor

9

in leveling the location; that is, the service Delaney rendered was less than Griffin and Griffin was "fairly and reasonably entitled to expect under current and existing states of skill, knowledge and technology." *Garrett*, 582 So.2d at 392.

In evaluating the evidence, contrary to Griffin's characterization of the facts[4], the Court is cognizant that the relationship among the parties in this case is not that of builder/contractor and unsophisticated first-time home buyer. By the admission of its agent, John Andrew Griffin, Griffin and Griffin had worked with Delaney for twenty-one years, since 1984, at the time they contracted for the preparation of the site for this particular well. John Andrew Griffin selected the final location for the well and admitted that Delaney prepared the site, by providing a clear and level location, as required by the letter agreement. [Doc. No. 75-7, Griffin Depo., pp. 51-53]. Nevertheless, Griffin and Griffin was in the business of obtaining lease interests, not the business of preparing well sites. For that, it relied on the expertise and skill of Delaney.

Cypress's expert, Furlow, has opined that the "cause of the rig failure appears to be improper preparation of the supporting pad," specifically, the "[i]nsufficient compaction of the fill materials." [Doc. No. 79-2, p. 2]. Further, in his deposition, Furlow explained that a $250 standard proctor density test should have been performed and that he would have recommended that Delaney perform a "control" on the supporting pad. He explained that the contractor would place the fill "material in roughly eight to nine inch loose lifts, compact it, and have somebody on site to measure moisture and density to see that it's . . . constructed properly." [Doc. No. 84, Furlow Depo., Exh. E, p. 59].

It is undisputed that Delaney had all responsibility for leveling the location, and, thus, if the

---

[4]*See* [Doc. No. 79, p. 2 ("Griffin, being the owner of the leasehold rights to the oil, gas and mineral rights under the various tracts, is in a similar position to the owner of the piece of property who was beginning to build a house.")].

rig's falling resulted from the negligence of any party, it would have to be that of Delaney. If Furlow's testimony is accepted, then the fill materials were not properly compacted, and Delaney could have avoided this problem by performing a density test and/or by doing a control test.

The Court is well aware that Furlow does not purport to be an expert in the oil and gas industry and admits that he does not know whether the industry requires standard proctor density tests. It is the undisputed testimony of Paul Delaney, Delaney's principal, that the tests are not required and that Griffin and Griffin did not request a soil test. As he explained, "[i]n the oil field, you compact [the dirt] to the best of your ability to get it tight to where the tractor stands up. As far as the density of it, you don't check density on these kind of jobs. They've never required it. If they did, it would be so high you couldn't do the job." [Doc. No. 75-6, Delaney Depo., p. 43]. However, viewing the evidence in the light most favorable to the non-movant and considering the *Garrett* decision, the Court finds that the industry standard, as testified to by Paul Delaney, is not conclusive. The Court finds there is a genuine issue of material fact for trial whether Griffin and Griffin was fairly and reasonably entitled to expect Delaney to ensure soil density and compactness were sufficient under the existing states of skill, knowledge and technology. Thus, Delaney's Motion for Summary Judgment is DENIED.

### III. CONCLUSION

For the foregoing reasons, Delaney's Motion for Summary Judgment [Doc. No. 75] is GRANTED IN PART AND DENIED IN PART. To the extent that Griffin asserted a breach of contract claim against Delaney, the Motion for Summary Judgment is GRANTED. The Motion is otherwise DENIED.

MONROE, LOUISIANA, this 15th day of July, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE